IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EXELON GENERATION COMPANY, LLC, | ) |
| | ) |
| | ) |
| Plaintiff-Counter-Defendant, | ) |
| | ) |
| v. | ) Case No.: 06 C 6961 |
| | ) |
| LOCAL 15, INTERNATIONAL | ) Judge Lefkow |
| BROTHERHOOD OF ELECTRICAL | ) |
| WORKERS, AFL-CIO, | ) Magistrate Judge Valdez |
| | ) |
| Defendant/CounterPlaintiff. | ) |

## DEFENDANT IBEW LOCAL 15'S RESPONSE TO PLAINTIFF'S MOTION TO RECONSIDER THE COURT'S SEPTEMBER 28, 2008 ORDER

NOW COMES the Defendant/Counter Plaintiff, IBEW LOCAL 15 (hereinafter "Union")

by and through its attorney, JOHN J. TOOMEY, ARNOLD AND KADJAN, and in Response to

Plaintiff/Counter-Defendant's Exelon (hereinafter "Employer") Second Motion to Reconsider

the Court's September 29, 2008 Order, states as follows:

### PROCEDURAL HISTORY

An access/discharge grievance was filed on March 1, 2005.  On the eve of the arbitration

hearing, Employer filed this action.  The Union Answered and Counterclaimed for a Stay of

Proceedings and an Order Compelling Arbitration.

Parties cross moved for Summary Judgment.  The Court ruled September 29, 2008

arbitration was appropriate and stayed further proceedings pending arbitration.

Employer moved to reconsider October 14, 2008 filing its Motion for Judgment Without

Stay or In the Alternative, To Alter or Amend The Judgment Or in the Further Alternative, To

Certify the Controlling Question for Appellate Review.  After briefing, the Court's Order of

November 15, 2008 denied Employer's Motion in its entirety.

1

Undeterred, Employer sought appellate review of the 9 U.S.C. 16(b)(1) interlocutory order by filing its Notice of Appeal December 29, 2008 in Appellate Case No. 08-4296. Union Moved to Dismiss the Appeal January 6, 2009. The Appellate Court ordered Employer to respond to the Motion. Employer dismissed the Appeal on January 21, 2009.

## SUMMARY OF ARGUMENT

The NRC Regulatory Guidelines are not a new change in law as compliance is not required until March 31, 2010. The Guidelines have been open for public comment since October 26, 2006. Thus any argument could have been previously presented in the 2007-2008 briefing on Summary Judgment.

The Revised Rules on the subject of Review of Denial of Access are not significantly changed. Reliance on NRC Guidelines filed under seal is misplaced as they are "voluntary", not controlling and so state on their face.

## PRESENT MOTION UNTIMELY

The September 29, 2008 Order is an interlocutory order though in prior pleadings and on appeal Employer argued it was in fact final. Fed. R. Civ. P. 54(b) provides that an interlocutory order is "subject to revision at any time" before entry of the final order. In contrast, Rule 59(e) authorizes motions to alter or amend a judgment and requires that a motion seeking such relief be filed within ten days of the entry of the judgment. Rule 60(b) addresses motions seeking relief from a "final judgment, order or proceeding." The Federal Rules of Civil Procedure do not expressly provide a procedure for requesting reconsideration of an interlocutory order. Natl. Union Fire Ins. Co. of Pittsburgh, Pa. v. Continental Ill. Corp., 116 F.R.D. 252, 253 (N.D. Ill. 1987). The absence of any explicit procedure has led some courts to look to Rules 59 and 60 for standards applicable to motions for reconsideration of an interlocutory order. See, e.g., Winn v. Symons Intl. Group, Inc., 2002 U.S. Dist. Lexis 7822, No. IP 00-310-C-B/S, 2002 WL 826356 at *1 (S.D. Ind. 5/1/02, Barker). Other courts have applied a broader standard. See, e.g. Denson v.

Northeast Ill. Regl. Commuter R.R. Corp., 2002 U.S. Dist. Lexis 65, No. 00 C 2984, 2002 WL 745797 at *1 (N.D. Ill. 2002, Hart), However, even under the broader standard, the purpose of a motion for reconsideration is not to rehash old arguments or raise new legal theories. In the interest of the orderly administration of justice, courts are reluctant to reconsider issues once decided. Urologix, Inc. v. Prosalund AB, 256 F.Supp.2d 911, 914 (E.D. Wis. 2003). Reconsideration of an interlocutory order is appropriate where the motion for reconsideration demonstrates that the prior decision is clearly erroneous and would work a manifest injustice, as where the applicable law or the known facts have changed since the decision. Id., Natl. Union Fire Ins. Co., 116 F.R.D. at 253.

Employer returns to Court seeking reconsideration 14 months after the Court's initial September 29, 2008 ruling and 11 months after dismissal of its appeal. Under Rule 60(c)(1) a motion for relief from a judgment or order must be made within a" reasonable time" and for reasons (1) (2) and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

The Motion is time barred under both Rule 59(e) requiring filing no later than 10 days after the entry of the judgment and by Rule 60(c)(1) one year from entry. It represents Employer's second attempt at changing this Court's Order in the District Court, a third attempt of its aborted appeal is considered. Under the standard set out above, there is no reason to reconsider the Order of September 28, 2008 as Employer has simply reasserted several arguments already considered and rejected by this Court simply re-wrapped in revision to the NRC Code.

## APPLICATION OF RULE 54(b)

In order to skirt the timing problems of Rule 59(e) and Rule 60 which are usually applied, Employer cites to Rule 54(b) and <u>BP Amoco Chemical v. Flint Hills Resources</u>, 489 F.Supp.2d 853 (N.D. Ill. 2007, Moran). That case sets out five bases for reconsideration, Number 4 is:

> "There has been a controlling or significant change in law since submission of the issue to the court."

<u>B. P. Amoco</u> allowed partial reconsideration, but not on the basis of a change of law citing to <u>Bank of Waunekee v. Rochester Cheese Sales, Inc.</u>, 906 F.2d 1185, 1191 (7th Cir. 1990) which noted that a basis for a motion to reconsider:

> "would be a change in the law or facts since submission to the court. Such problems rarely arise and the motion to reconsider should be equally rare." <u>Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.</u>, 99 FRD 99, 101 (E.D. Va. 1983).

The Bank's Motion to Reconsider was denied in part because of the bank's failure to explain its delay.

At bar, the Union does not agree with Employer's characterization of the March 27, 2009 Nuclear Regulatory Commission (NRC) revisions to 10 CFR 73.56(a)(4) and 56(l) which need not be implemented until March 31, 2010 as a substantial change in the law. A side by side comparison of the revision and current law (Exhibit 1) bear this out and is confirmed in the Federal Register comments at 74 F.R.N. 58.

The effective date of the rule was May 26, 2009. Implementation with the final rule is required by March 31, 2010 for licensees currently licensed to operate, F.R. Page 13926, 10 CFR 73.56(a)(1), Page 1379:

> "By March 31, 2010 each nuclear power reactor license . . . . shall implement the requirements of this section."

4

As compliance is not required until March 31, 2010 and Arbitrator Cipolla has offered February and March, 2010 dates, there is no present "change in the law" issue as the case can be heard and decided before the compliance date of the CFR revisions is required without the need for further examination of the revisions.

Additionally, if the claimed "change in law" is so very compelling and substantial, there is no explanation by Employer for the eight month delay from March 27, 2009 in filing its new (second) Motion to Reconsider. Accordingly, the Motion to Reconsider must be denied as the arbitration can be completed before its implementation date.

## NO CHANGE IN THE LAW AS EMPLOYER DESCRIBES

Aside from the above shortcomings of the Motion to Reconsider, the 59 page single spaced Power Reactor Security Requirements Final Rules at 74 FR No. 58 (2009) outlines at Page 13927 the history of the rule revision. A Proposed Rule October 26, 2006 (71 FR 62663) was published for a 75 day public comment period and twice extended and closed for comment March 26, 2007 for stake holders, like Employer. The NRC then held three public comment meetings with the last being conducted March 9, 2007. The Commission also published a supplemental proposed rule on April 10, 2008 (73 FR 19443). Thus the changes are not new, but are subtle revisions to 10 CFR 73.56 which were well underway during the briefing schedule of the original Motion for Summary Judgment December 14, 2007 through March 11, 2008.

Page 13928, 74 F.R.No. 58 *Access Authorization Enhancements* details revisions to the access rules. It does not say anything about barring arbitration as a form of appeal review. Instead it focuses on new requirements for individuals who have electronic means to adversely impact facility safety, enhancements to the psychological assessment requirements, requirements for investigation of criminal and credit history records, and five year psychological reassessments for certain critical job functions. It is silent on arbitration and does not forbid it as Employer asserts.

5

I.      **NEI Comments at Page 13931 <u>Visitors Access</u>**

Page 13931 refers to comments made by the Nuclear Energy Institute (NEI), a

consortium of nuclear energy producers of which Employer is a member.  This consortium, with

input from its members, writes the NEI-Access procedure.  Employer has been singled out for

their assistance in its preparation in the past (Exhibit 2).  NEI commented on armed escorts for

certain visitors not on the 56(l) review procedures/arbitration topic.

The Federal Register at Page 13947 *F. Section 73.56 <u>Personnel Access Authorization for</u>*

*<u>Nuclear Power Plants,</u>* outlines the key changes to the Rule set forth at Page 13879:

> 73.56(a)  *Introduction* (1) By March 31, 2010 each nuclear
> power reactors license licensed under 10 CFR Part 50 shall
> implement the requirements of this section . . . .

Pages 13947-13950 discuss in detail changes to Section 73.56 by subtopic.  However, at Page

13950  discussion jumps from Section 73.56(k) to Section 73.56(m) without mention of Section

73.56(l) *Review Procedures* (formerly 73.56(e)).

The Federal Register 74 FR No. 58 at Page 13955 states its purpose at **IV** a **Section-by-**

**Section Analysis**:

> "to identify what sections are being affected by this final rulemaking and
> to provide explanations of the purpose, scope and intention of each section."

*Section 73.56(l) Review Procedures* at Page 13963 states:

> "This paragraph outlines requirements for responding to an individual's
> request for review of a determination to deny unescorted access or
> unescorted access authorization or unfavorable termination of an
> individual's unescorted access authorization."

There is no statement anywhere that the NRC's prior position at 56 FR 18996 (4/25/91) be

abandoned (Exhibit 10 to Union's Motion for Summary Judgment 12/13/07), Exhibit 3 here:

> "It should be noted that the commission never intended that any review
> procedure that already exists in a bargaining agreement be abandoned."

6

The NRC only said then, as they do now, at Page 13979 of the newly revised Section 73.56(a)(4): "Only a licensee shall grant an individual unescorted access". This is identical to its 1991 position.

> "The ultimate responsibility for granting unescorted access rests with the licensee, provided the Commission's requirements are met consistent with 56 FR 18997, Page 16, (1991)."

Thus there is no major shift in NRC policy, position or change in law on this subject.

The existing Section 73.56(e) *Review* Procedures provided:

> "The procedure may be an impartial and independent internal management review."

The re-numbered revised Section 73.56(l) now reads:

> "The procedure must provide for an impartial and independent internal management review."

That is the Employer's entire argument for a change in the law. While an internal procedure is provided, there is no statement in the Revision Comments that the decision is not subject to arbitral review once Employer's internal procedure is exhausted. Employer reads the word "must" to be exclusive, but there is nothing in the public comments to support that conclusion. There is no statement renouncing the prior NRC position on arbitration or referencing this Court's Decision.

In fact, *Section 73.56(m) Protection of Information* Page 13985 suggests that further review (appeal) of Employer's determination is contemplated. In defining the persons to whom disclosure is permitted, it extends to under revised Section 73.56(m)(l)(v) to:

> v. "The presiding officer in a judicial or administrative proceeding, that is initiated by the subject individual."
> vii. Other persons pursuant to court order.

The former 73.56(f)(3) *Protection of Information* allowed disclosure to:

> (vi)    Persons deciding matters on review or appeal
> (vii)   Other persons pursuant to court order.

7

It is clear under Section 73.56(m)(1)(v) that a labor arbitration by definition is an "administrative proceeding initiated by the subject individual" (i.e. grievant) and thus contemplated by the regulations and allows for the disclosure of information and in this case, permitted by Section 73.56(m)(1)(vii):

> "Other persons pursuant to court order"

That language is unchanged from the former 56(f)(3)(vii). At bar the Court has ordered arbitration and disclosure may be made to Arbitrator Cipolla and it is therefore compliant with the above former and revised sections.

An arbitrator is "the presiding officer in an administrative proceeding" is the correct view as 10 CFR 56(o)(2) Page 13986 <u>Records</u> requires records be kept:

> "For at least five years after the licensee or applicant terminates or denies an individual's unescorted access or unescorted access authorization <u>or until the completion of all related legal proceedings whichever is later.</u>"

This is repeated at 56.(o)(2)(ii) and 56.(o)(2)(iii) at Page 13986. If absolute finality were intended by an internal review as Employer alleges, there is no need for inclusion of the term "<u>all</u> related legal proceedings" referring to access records. The core wording is precise, expanding coverage from just "court proceedings" as did the prior Section 73.56(m)(1)(vi).

All "legal proceedings" is sufficiently broad to include labor arbitrations and is expanded from the prior language to include labor arbitration.

Accordingly, while the Code of Federal Regulation was revised March 27, 2009 after more than three years of publication and comment, it does not bar arbitration as a method of review. It does not so state, and the public comments did not address that issue.

## THE REGULATORY GUIDELINES ARE VOLUNTARY AND COMPLIANCE WITH THEM NOT REQUIRED

Employer has filed under seal two U. S. Nuclear Regulatory Guides 5.77(4) (draft issued as DG-5011 dated December, 2008) now dated June, 2009 and 5.66 (Draft DG-5030 reviewed at a stakeholder's meeting on April 2, 2009). Employer is a stakeholder. They are purely voluntary and not controlling and so state on their face.

Each guide states as a footnote to the first page that they are voluntary and compliance is not required:

> "Regulatory guides are not substitutes for regulations and compliance with them is not required. Methods and solutions that differ from those set forth in regulatory guides will be deemed acceptable."

Regulatory Guide 5.77, Page 3 states:

> "Only licensee management acting through a designated reviewing official may grant, deny, suspend, withhold, revoke or terminate . . access and make all final decisions regarding access to its own facilities."

Nowhere does the above paragraph discuss "appeals" or state an arbitrator may not decide an issue. References to NEI 03-01 relate to 73.55 Physical Security Plan and it is silent on Section 73.56(l) appeals. The NEI Plans are not made part of the Guide.

Guide 5.66 finds NEI-03-01 to be an acceptable approach to 10 CFR 73.56. The particular appeal section is not included. All NEI did in May, 2009 at Section 12.(6)(4) regarding Review is to delete the prior wording regarding review by an impartial third party to may not be reviewed by an impartial third party.

This was done to draft around the Court's September, 2008 Decision which noted that even the NEI procedures provided for such review. Simply by altering the NEI 03-01 Guideline, which Employer in effect writes, it can circumvent the Court's Order with a stroke of the pen calling it a change in law which it is not.

## EMPLOYER'S VIEWPOINT IS FEDERALLY PRE-EMPTED
## BY THE NLRA AND SECTION 301

It is fundamental that a grievance and arbitration is a mandatory subject of bargaining under the National Labor Relations Act <u>Litton Financial Printing v. Litton Bus System</u>, 501 U.S. 190, 199, 111 S. Ct. 2215 (1991). A refusal to arbitrate is an 8(a)(5), 29 U.S.C. 158(a)(5) failure to bargain charge for which the National Labor Relations Board's cure is to defer to arbitration under the <u>Collyer Insulated Wire Doctrine</u> 192 NLRB 1931 (1971). A failure to arbitrate is also a breach of contract under 29 U.S.C. 185(a), Section 301.

9 U.S.C. Section 185(a). Section 301 of the LMRA creates a federal cause of action and grants district courts jurisdiction to adjudicate legitimate labor disputes involving breaches of collective bargaining agreements, so that the parties to those agreements have access to civil remedies for breach of contract. <u>Textile Workers Union of Am. v. Lincoln Mills of Ala.</u>, 353 U.S. 448, 455, 40 LRRM 2113 (1957). In accordance with Section 301, the Supreme Court recognized that when an unfair labor practice constitutes breach of a collective bargaining agreement, the NLRB's authority "is not exclusive". <u>Smith v. Evening News, Ass'n.</u>, 371 U.S. 195, 197, 51 LRRM 2646 (1962). Section 301 governs claims based directly on rights created by a collective bargaining agreement and claims substantially dependent on an analysis of those agreements. <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 394, 122 LRRM 2521 (1987).

To adjudicate and resolve disputes involving breaches of collective bargaining agreements, Section 301 of the LMRA "authorizes federal courts to fashion a body of federal law" to enforce those agreements. <u>Lincoln Mills,</u> 353 U.S. at 451. This body of federal law, consistent with the NLRB's administration of labor policy, ensures uniform interpretation of such labor contracts and promotes peaceable resolution of legitimate labor disputes. In <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 118 LRRM 3345 (1985), the Supreme Court recognized the interests in interpretive uniformity and predictability that require that labor-contract disputes

10

be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law. 471 U.S. at 211. Accordingly, to maintain that "uniformity and predictability", the pre-emptive force of Section 301 displaces any independent federal or state cause of action when the claim concerns a legitimate labor dispute and involves the breach of a collective bargaining agreement. Just as federal and state courts are not suited to displace the NLRB and to resolve legitimate labor disputes, the Supreme Court recognized that an LMRA lawsuit is not suited to displace the jurisdiction of federal courts and to resolve claims that (1) involve the application of independent federal statutes or state statutes "rooted in local feeling and responsibility" and (2) concern only collateral issues of labor law. Garmon, 359 U.S. at 244. In Connell Constr. Co., Inv. v. Plumbers & Steamfitters Local Union No. 100, 421 U.S. 616, 89 LRRM 2401 (1975), the Supreme Court recognized that "federal courts may decide labor law questions that emerge as collateral issues in suits brought under independent federal remedies…" 421 U.S. at 626. Accordingly, the uniform policies of labor law and the pre-emptive force of Section 301 do not apply if the claim concerns labor issues that only are tangential to the resolution of the central dispute. Vaca, 386 U.S. at 179-80. At bar, the labor issue and contract interpretation is central to the disposition of the case.

## RECONCILIATION OF FEDERAL LABOR LAW WITH NRC POLICY

The issue before this Court is whether the broad sweep of Section 301 pre-emption can be reconciled with the NRC Code to give simultaneous effect to each body of law without contradicting the general purpose or congressional intent underlying either labor law or the NRC Code.

11

In <u>United States v. Turkette</u>, 452 U.S. 576(1981), the Supreme Court articulated a rule of statutory construction:

> "In determining the scope of a statute, we look first to its language.
> If the statutory language is unambiguous, in the absence of 'a
> clearly expressed legislative intent to the contrary, that language
> must ordinarily be regarded as conclusive."

452 U.S. at 580 quoting <u>Consumer Product Safety Comm'n v. GTE Sylvania, Inc.</u>, 447 U.S. 102, 108 (1980). When the language of a statute is not clear, however, the Supreme Court concluded that courts should examine congressional intent and legislative history underlying the statute to determine whether there is "a clearly expressed legislative intention to the contrary". <u>GTE Sylvania, Inc.</u>, 447 U.S. at 108; <u>United States v. Doherty</u>, 969 F.2d 425, 429 (7th Cir 1992). Absent a clearly expressed intention that Congress intended one federal statute to pre-empt another, courts must regard each as effective and give them simultaneous effect. <u>Morton v. Mancari</u>, 417 U.S. 535, 551, 8 FEP Cases 105 (1974). Courts are hesitant to find that one federal statute pre-empts another. <u>Borden</u>, 308 U.S. at 198, repeals by implication are not favored. <u>Red Rock v. Henry</u>, 106 U.S. 596, 601-602 (1883) holding that two statutes must be read so as to coexist harmoniously unless congressional intent is "clear and manifest".

The NRC never intended to pre-empt Section 301 and collective bargaining. It has previously so stated. The new Revision does not revoke NRC prior statements; it is silent on the subject.

The NRC 56 Fed. Reg. 18997 (4/25/91), Page 10, stated its intent that:

> "The Commission never intended that any review procedure
> that already exists in a bargaining agreement be abandoned."

The NRC went on to state its position, Page 11:

> "There is no basis for objection to the review portion of the rule
> in unionized plants since the rule would allow the use of a grievance
> procedure for review of denials or revocations of access authorizations."

At Page 17:

> "It is not the intent of the Commission to exclude from consideration
> or to require consideration of access authorization issues from the
> collective bargaining process as long as the resolution of these issues
> is within the limits set by this rulemaking."

The newly revised Rules do not retract the prior findings of the NRC or contradict the above. They are silent on arbitration and collective bargaining in unionized plants but expand to whom disclosure can be made and records to be kept.

Congressional intent is not "clear and manifest" to overrule Section 301.

In order that Section 301 pre-emption and the Revised Rules be read to co-exist harmoniously, the prior NRC position must be taken into account which supports this Court's September 28, 2008 ruling as Section 301 is not irreconcilable with the Revised Code.

The pre-emptive force of Section 301 displaces any independent federal or state cause of action when the claim concerns a legitimate labor dispute and involves the breach of a collective bargaining agreement. Allis-Chalmers v. Lueck, 471 U.S. 202, 211, 118 LRRM 3345 (1985). As the issue of arbitrability under Section 301 has already been adjudicated in the Union's favor, requiring interpretation of the collective bargaining agreement, it is the central issue in this litigation and is given pre-emptive effect over the NRC Code because the labor related issue is central to the fundamental dispute. Id. See Talbot v. Robert Mathews Distribution Co., 961 F.2d 654, 659 (7th Cir. 1992) pre-emption of civil RICO causes of action. Baker v. IBP, Inc., 357 F.3d 685, 688 (C.D. Ill. 2004), 174 LRRM 2230. "Federal statutes do not "pre-empt" other federal statutes, though one may replace another implicitly if they are irreconcilable."

As a further and final indicator of the vitality of the Section 301 doctrine is <u>14 Penn Plaza LLC v. Pyett</u>, 129 S. Ct. 1456, 173 L.Ed.2d 398 (4/1/09). The U. S. Supreme Court heartily endorsed labor arbitration as a method for resolving statutory claims including factual and legally complex claims.. The Supreme Court has strengthened its endorsement of arbitration of statutory claims lending support to the Union's position for review.

Accordingly, the NRC Code does not implicitly repeal Section 301 and established federal common law labor policy favoring arbitration of employment disputes. Denial of access is such an issue

## EMPLOYER'S AUTHORITY DISTINGUISHED

Employer relies on a 21 year old case, not found in its original pleadings. <u>Department of the Navy v. Egan</u>, 383 U.S. 578, 98 L.Ed.2d 918 (1988) arising under the Civil Service Reform Act and Military Employment, a statute not in issue at bar, apparently for the concept that only minimal due process be afforded and that an arbitrator could not hear the access issue. The Federal Register did not state it is endorsing the Civil Service Reform Act as a model for 56(l) *Review Procedures*. There is no comment to that effect. This is Employer's view and could have been set forth in its Motion for Summary Judgment. <u>Egan</u> is neither new, nor a change in existing law..

<u>Egan</u> was cited in <u>Dey v. Nuclear Regulation Commission</u>, 2007 Merit Systems Protection Board 160, 2007 MSPB Lexis 4374 (12/17/07) (Exhibit 4). Therein, the NRC removed Dey from his position for unacceptable performance under 5 U.S.C. 43. He then asked the National Treasury Employees Union (NTEU), his collective bargaining representative under 5 U.S.C. 7101, to appeal (grieve) his conduct removal to arbitration. While <u>Dey v. NRC</u>, 2006 MSPB Lexis 7136 (11/6/06) turns on a procedural issue, it illustrates that the NRC as an employer arbitrates its own internal dispute issues with labor organizations. Employer here cannot in good faith argue it is not required to do the same.

14

## CONCLUSION

Employer's Motion to Reconsider must be denied as:

1.      It does not present any new or change in the law and

      is not timely brought.

2.      Compliance with the Revisions is not required until March 31, 2010

      and the arbitration can be initiated before that date.

3.      The Comments to the Revisions regarding 56(l) do not retract

      prior NRC positions on arbitration and collective bargaining.

WHEREFORE, the Union prays that Employer's Motion to Reconsider be denied in its entirety and Employer be ordered to proceed to arbitration forthwith and prior to March 30, 2010..

LOCAL 15, IBEW, Defendant/CounterPlaintiff

By: _____

One of Its Attorneys

John J. Toomey
ARNOLD AND KADJAN
19 W. Jackson Boulevard, Suite 300
Chicago, Illinois 60604
(312) 236-0415