**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **EXELON GENERATION COMPANY, LLC,** ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | |
| v. ) | |
| ) | No. 06 CV 6961 |
| **LOCAL 15, INTERNATIONAL** ) | |
| **BROTHERHOOD OF ELECTRICAL** ) | Judge Joan H. Lefkow |
| **WORKERS, AFL-CIO,** ) | |
| ) | |
| Defendant/Counter-Plaintiff. ) | |

**OPINION AND ORDER**

Exelon Generation Company, LLC ("Exelon") moves to reconsider this court's September 29, 2008 order granting summary judgment in favor of Local 15, International Brotherhood of Electrical Workers, AFL-CIO ("Local 15") and compelling arbitration pursuant to the terms of the parties' collective bargaining agreement ("CBA"). For the reasons stated herein, Exelon's motion to reconsider [#107] is denied.

**LEGAL STANDARD**

A court can reconsider an interlocutory order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The decision to grant reconsideration is committed to the court's discretion. *Caisse Nationale de Credit Agricole* v. *CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). The problems warranting a grant of a motion to reconsider are rare. *Bank of Waunakee* v. *Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted). The motion is appropriate, however, where "the Court has patently misunderstood a party, or has made a decision outside

the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court." *Id.* (citation omitted) (internal quotation marks omitted). Such a motion "is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment." *County of McHenry* v. *Ins. Co. of the W.*, 438 F.3d 813, 819 (7th Cir. 2006) (citation omitted) (internal quotation marks omitted).

## BACKGROUND[1]

Exelon filed a single-count complaint against Local 15 seeking a declaration that Exelon's decision to deny unescorted access authorization to Terence McMahon ("McMahon") is not arbitrable under the CBA. Local 15 counterclaimed to compel arbitration of the grievances which it filed on McMahon's behalf concerning Exelon's decision to deny McMahon site access and terminate his employment. In its September 29, 2008 opinion, the court granted summary judgment in favor of Local 15, ordering the parties to arbitrate the grievances pursuant to the terms of the CBA. The court found that Nuclear Regulatory Commission ("NRC") regulations and requirements do not preclude arbitration regarding Exelon's decision to deny McMahon unescorted access authorization. Op. at 12. In coming to this conclusion, the court relied on then-effective NRC regulations related to the review of access authorization decisions, regulatory history, and guidelines developed by the Nuclear Energy Institute ("NEI").

---

[1] The court assumes familiarity with the background of this case as laid out in its September 29, 2008 opinion.

Since the court's September 29, 2008 opinion, the NRC has revised its regulations governing unescorted access to nuclear facilities. *See* Power Reactor Security Requirements, 74 Fed. Reg. 13,926 (Mar. 27, 2009) (to be codified at 10 C.F.R. pts. 50, 52, 72, & 73). These revisions were effective May 26, 2009, and Exelon is required to comply with the changes by March 31, 2010. *See id.* Subsequently, in May 2009, the NEI issued NEI 03-01 (Revision 3), amending its guidelines regarding the access authorization program. The NRC approved these guidelines as an acceptable means of implementing the revised NRC regulations in June 2009. *See* NRC Regulatory Guide 5.66 (filed under seal with the court). Exelon filed the instant motion to reconsider on November 17, 2009, claiming a change in governing law due to the revised NRC access authorization regulations.

## DISCUSSION

### I.    Timeliness of the Motion

Before addressing the merits, Local 15 argues that Exelon's motion to reconsider is untimely because Rule 60 requires that a motion to reconsider be made within a reasonable time. *See* Fed. R. Civ. P. 60(c) ("A motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order of the date of the proceeding."). Rule 54, however, contains no time limit for bringing a motion to reconsider. Although Local 15 concedes that the September 29, 2008 order is an interlocutory order falling under Rule 54 and that Rule 60(b) applies to relief from a final judgment, order, or proceeding, Local 15 argues that the standards courts use under Rule 60 to determine the timeliness of a motion to reconsider should apply here. It is true that courts considering interlocutory orders have looked to Rule 60 for guidance in determining whether reconsideration

is appropriate. *See, e.g.*, *Zepter* v. *Dragisic*, 237 F.R.D. 185, 187 (N.D. Ill. 2006) ("Although motions to reconsider are not explicitly provided for in the Federal Rules of Civil Procedure, such motions are routinely presented. Courts commonly treat these motions as if they fall under the scope of Rule 59(e), which provides for the amendment of judgments, even when they are requests to reconsider orders instead of final judgments."). Regardless, Local 15 misreads Rule 60(c) as requiring the instant motion to have been brought within one year of the court's order, even though the three reasons to which such a limitation applies are not at issue here.[2] The only requirement Rule 60 would impose in this situation where Exelon urges reconsideration due to a controlling change in law is that the motion be brought "within a reasonable time."

While it is true that Exelon could have filed its motion to reconsider soon after the NRC published its final rulemaking related to authorization access review on March 27, 2009 instead of waiting until November 17, 2009 to do so, Exelon explains that it did not do so because it was negotiating a possible settlement with McMahon that would have obviated the need for arbitration and thus reconsideration of the court's September 29, 2008 order. It further contends that it has been in contact with Local 15 about the potential for creating an alternative review process that would both address the revised NRC regulations and Local 15's due process concerns. As it now appears that these discussions have stalled and arbitration of McMahon's grievances is necessary, however, Exelon has moved for reconsideration. Exelon cannot be faulted for seeking to conserve the parties' and the court's time and resources by waiting to

---

[2] A motion under Rule 60(b) must be brought within a year of entry of final judgment if the reason asserted for the request for relief is: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); [or] (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]" Fed. R. Civ. P. 60(b).

determine whether a motion for reconsideration would indeed be necessary. Further, Exelon has brought the change in law to the court's attention before arbitration has begun and thus before final judgment has been entered in this proceeding. As Rule 54 allows the court to reconsider an interlocutory order at any time prior to the entry of a final judgment and Rule 60, if borrowed, would only require a motion to be brought "within a reasonable time," the court does not find Exelon's motion untimely and will proceed to consider its merits.

## II. Controlling Change in Law

Exelon argues that the revised NRC regulations prohibit an arbitrator from reviewing access authorization denials, as would happen if arbitration were to proceed in this case. Local 15 responds that no change in law has yet occurred that would affect the court's order, as compliance is not required until March 31, 2010. Further, Local 15 disputes that the changes to the NRC's regulations prohibit arbitral review and contends that because the revised regulations were open for public comment beginning in 2006, Exelon should have made its present arguments in briefing summary judgment during 2007 and 2008.

Prior to amendment, 10 C.F.R. § 73.56 stated that a licensee, like Exelon, had to include in its access authorization program "a procedure for review, at the request of the affected employee, of a denial or revocation by the licensee of unescorted access authorization of an employee of the licensee . . . which adversely affects employment." 10 C.F.R. § 73.56(e) (2008). The regulation further provided that "the procedure *may* be an impartial and independent internal management review." *Id.* (emphasis added). Although the regulations did not explicitly mention that arbitration under a collective bargaining agreement was another permissible form of review, the court noted that "it is also apparent that 10 C.F.R. § 73.56 does not, by its own terms,

5

prohibit review of an access denial pursuant to a collectively bargained grievance procedure, such as arbitration." Op. at 8. This conclusion was supported by the regulatory history, as the comments accompanying the final rulemaking emphasized that the NRC "never intended that any review procedure that already exists in a bargaining agreement be abandoned." *Id.* (quoting Access Authorization Program for Nuclear Power Plants, 556 Fed. Reg. 18,997, 19,002 (Apr. 25, 1991)) (internal quotation marks omitted). The NEI's guidelines, though not binding, also buttressed the court's conclusion, as they stated that "an alternative review process that is independent and impartial is acceptable." *Id.* at 9 (quoting NEI 03-01 (Revision 1), at 31 (April 2004)) (internal quotation marks omitted).

After amendment, the regulations now state that the procedure for reviewing access authorization denials "*must* provide for an impartial and independent internal management review." 10 C.F.R. § 73.56(l) (2009) (emphasis added). While the prior version of § 73.56(a)(4) stated that "the licensee is responsible for granting, denying, or revoking unescorted access authorization," 10 C.F.R. § 73.56(a)(4) (2008), the version now in force states that "*[o]nly* a licensee shall grant an individual unescorted access." 10 C.F.R. § 73.56(a)(4) (2009) (emphasis added). The commentary accompanying the 2009 revisions does not address changes made to the review procedure, or explicitly note that the NRC's previous position that alternate review procedures for access denials provided for by collective bargaining acts are permissible. NEI, however, revised NEI 03-01 so as to state that "the decision from the licensee internal management review process is final, shall be the exclusive means by which [authorized access]

decisions may be reviewed, and may not be reviewed or overturned by any third party."[3]  NEI 03-01 (Revision 3), at § 12.6(b)(4) (May 2009).  The NRC endorsed the NEI's position in Regulatory Guide 5.66 in July 2009.  While the NRC's Regulatory Guides are not binding, the NRC has indicated its intent to use the standards described by NEI 03-01 (Revision 3) in evaluating whether licensees have complied with the NRC's revised regulations.  *See* NRC Regulatory Guide 5.66, at 4.

Local 15 argues, and the court agrees, that, regardless of whether the revised NRC regulations prohibit third-party review of access authorization denials, because Exelon need not be in compliance with these revisions until March 31, 2010, arbitration can proceed as ordered by the court before that date.[4]  The arbitrator has offered hearing dates in February and March 2010, providing sufficient time for a decision to be made before compliance is required.  If Exelon truly is concerned that it will be found to be out of compliance with the revised regulations if an arbitral decision is not rendered by March 31, 2010, it is instructed to ensure that the arbitration proceeds on an expedited schedule.[5]

---

[3] Local 15 argues that the court should not give weight to NEI 03-01 (Revision 3), as Exelon is a member of NEI and has contributed extensively to the drafting of NEI guidance on the issue.  Local 15 claims that the changes to NEI 03-01 made in May 2009 were "done to draft around the Court's September, 2008 Decision," effectively "circumvent[ing] the Court's Order with a stroke of the pen calling it a change in law which it is not."  Def.'s Resp. at 9.  The court does not find this argument persuasive, particularly since Local 15 previously relied on NEI 03-01 as supporting arbitration, and so will consider the revisions to NEI 03-01, endorsed by the NRC as an acceptable means of implementing the revised access review regulations, as appropriate.

[4] The court recognizes Exelon's concerns regarding the timing of the arbitration, but does not find them compelling.  The court does not find it unreasonable to expect the parties to arbitrate McMahon's grievances within the next several months when they have had over a year to prepare to do so since the court's order compelling arbitration.

[5] Because the court finds that the parties can proceed with arbitration before Exelon must be in compliance with the NRC's revised regulations, the court need not determine whether the revisions prohibit third-party review of access authorization denials.

## **CONCLUSION AND ORDER**

For the foregoing reasons, Exelon's motion to reconsider [#107] is denied.


Dated:  December 22, 2009                    Enter:_____

                                                                        JOAN HUMPHREY LEFKOW
                                                                        United States District Judge